Strafford,
No. 5493.

STATE

*v.*

RAYMOND A. GRAVEL.

Argued March 8, 1967.
Decided May 23, 1967.

*George S. Pappagianis*, Attorney General, *Norman E. D'-Amours*, Assistant Attorney General ( *Mr. D'Amours* orally ), for the State.

*Anthony McManus* ( by brief and orally ), for the defendant.

GRIMES, J. Defendant claims that the indictment is defective, that the Court erred in not dismissing the indictments against him and Haggenmiller at the conclusion of the evidence, and in his instruction to the jury. We find all these contentions to be without merit and affirm the conviction.

The indictment sets forth not only all the essential elements of the crime of false pretense on the part of Haggenmiller and the fact that the defendant Gravel with knowledge that Haggenmiller was attempting to cheat and defraud the insurance company aided him in his unlawful attempt, but described in precise detail the actions of both and was sufficient to inform the defendant of the nature and cause of the accusation so as to allow him properly to prepare his case. *State* v. *Tierney*, 104 N. H. 408; *State* v. *Story*, 97 N. H. 141.

There was direct evidence of the following facts:

Haggenmiller owned a 1959 Cadillac which was in bad condition, was insured against theft with the St. Paul Mercury Insurance Company, and was financed. Gravel was an automobile salesman. Haggenmiller asked Gravel to " get rid " of his car. By this he meant to hide or store it and Gravel so understood.

Gravel asked Rhodes to hide the car and offered to pay him. At first he wanted Rhodes to take it to Massachusetts but Rhodes refused because of the federal law. He said he had a friend in Chocorua where he could leave it. Later Gravel — who was then suffering from gout — sent his girl friend to arrange to meet Rhodes near Haggenmiller's Donut Shop where the Cadillac would be parked and follow him to Chocorua and drive him back. The plan was carried out on the night of January 27, 1965 and Gravel then sent his girl to Haggenmiller to get some " green stuff. " Gravel admits Haggenmiller gave him $50 but his

signed statement says it was $87. The next morning, January 28, Haggenmiller reported to the police that his car was missing and on the morning of the 29th reported the loss to his insurance agent and signed a statement that afternoon for the agent. The $10 per day allowance up to $300 until the car was either returned to his use or paid for in full was discussed. Nothing further needed to be done to collect the $10 per day allowance, but a proof of loss needed to be filed before the value of the car would be paid.

In the meantime one of his employees had reported to Haggenmiller that Rhodes had been seen driving his car and by the 29th or 30th Haggenmiller knew where his car was hidden. Soon after the car was left in Chocorua, Rhodes' friend demanded he remove the car and Rhodes pestered Haggenmiller to go with him to remove it. It was about three weeks later, however, before Haggenmiller borrowed a car and drove up with Rhodes to get the car.

Haggenmiller started the car, which had a flat tire, and drove it toward Rochester on icy roads. He went off the road into a snow bank and stone wall ( Rhodes said it looked like he deliberately drove it into the stone wall ), got out and smashed all the windows with a tire iron, then rode back to Rochester with Rhodes, leaving the Cadillac where it was later found by the police. Haggenmiller never reported to the police or his insurance agent that he knew where his car was although there was evidence that he knew where it was when he talked to his insurance agent. When Gravel and Haggenmiller were being questioned at the police station following the recovery of the car, each claimed it was the other's idea to get rid of the car.

The evidence was sufficient to support a finding that Haggenmiller intended to defraud his insurance company by the false pretense that his car had been stolen and that the defendant Gravel knew this and arranged to help him by engaging Rhodes to hide the Cadillac. Haggenmiller was charged with an attempt and it was not necessary therefore, as contended by defendant, that the State prove that he actually obtained money from his insurance company by false pretense. It is sufficient that he intended to do so and had performed some overt act toward its accomplishment. *State* v. *Davis*, 108 N. H. 45. Haggenmiller's policy provided not only for payment of the fair value of the car if it was stolen and not recovered but also for a loss of use

payment of $10 per day up to $300 until the car was returned or the loss was paid in full. The testimony of the insurance representative was sufficient to sustain a finding that while Haggenmiller would have been required to file a proof of loss to collect the fair value of the car, nothing more had to be done by him to collect the loss of use payments. As to the loss of use payments, he had committed a sufficient overt act to constitute an attempt and only the intervention of the police prevented full consummation of the crime. *State* v. *Skillings*, 98 N. H. 203, 209. It is unnecessary therefore for us to decide whether what he did with respect to the claim for the value of the car went sufficiently beyond mere preparation to constitute an attempt. See 22 C.J.S., Criminal Law, *s.* 75 ( 2 ) b, *pp.* 230-233. 1 Wharton, Criminal Law and Procedure, *s.* 74, p. 157 ( 1957 ). The evidence was sufficient to support a finding of guilty and the motions to dismiss were properly denied in both cases. *State* v. *Santos*, 107 N. H. 490; *State* v. *Keegan*, 106 N. H. 152. Defendant's reliance upon *State* v. *Skaff*, 94 N. H. 402, is misplaced. There the charge was that the defendant defrauded Mrs. Uline by obtaining money by false pretense from a bank. A new trial was ordered because the Trial Judge did not make it clear that in addition to making the false pretense to the bank from which defendant obtained money, an essential element of the crime to be proved was that defendant intended to defraud Mrs. Uline. In the case before us, the false pretense was made to the same person it is alleged Haggenmiller intended to defraud, and the more complicated situation of the *Skaff* case is not involved.

Considering the charge as a whole, the Trial Judge made it sufficiently clear that to find Gravel guilty the jury would have to find not only that Haggenmiller intended to defraud his insurance company by the false pretense that his car had been stolen and committed an overt act toward the commission of the crime, but also that Gravel knew of this intention and himself "intended to assist in and abet Mr. Haggenmiller to defraud the insurance company . . . and . . . undertook to obtain the assistance of Mr. Rhodes to do the acts he did . . . and intended to do those acts for the purpose of assisting Mr. Haggenmiller in defrauding the insurance company." Later in the charge, the Judge said: "It isn't enough either in the case of Mr. Gravel or the case of Mr. Haggenmiller that they intended to defraud the insurance company. They must have done some act towards its

furtherance . . . ." It is reasonably certain that the jury under-stood that an intent to defraud the insurance company and an overt act toward that end were requirements for a finding of guilt. Other contentions of the defendant have been considered and found to be without merit.

*Exceptions overruled.*

All concurred.